Okay. Alright. The next case of the day is Case 4, and it is 22-13-36, Stant USA Corp. v. Factory Mutual Insurance Company, and good morning, good morning, well, yes, good morning, Mr. Ellison. Good morning, Your Honor. May it please the court. The Stant appellants seek reversal of the district court's opinion, dismissing their complaint, seeking coverage under their factory mutual insurance policy for pandemic-related damages. And this is an Indiana law case. The fundamental goal under Indiana law in interpreting an insurance contract is to enforce the parties' intent as manifested in the language of the contract. And that's a critical point here, Your Honors, because this contract is different than all of the other insurance policies that have been dealt with to date by this court and by the Indiana courts for some very critical reasons. Those policies all provided coverage for all risks of direct physical loss, and this policy does not, one, contain the word direct, which connotes a more expansive and broader coverage to the parties that buy the factory mutual policy, including the Stant appellants. And the other important distinction with this policy is that it includes the all-risk language as the introductory portion of the policy in the coverage grant. Now, in distinguishing our case law, you argued in the brief that the language here does not require that physical loss or damage be direct, but the policy excludes all loss or damage that is indirect or remote. So how is that materially different from limiting coverage to direct physical loss or damage? If you look at the appendix on page 33, the initial insuring agreement says that the policy ensures all risks of physical loss or damage. It does not include the word direct. But then when you flip to page 46, right, as Judge Rovner was pointing out, the very first exclusion in A1 is of indirect or remote loss. So as a practical matter, if indirect loss is excluded, you would say what is included? Direct. Fair enough, Your Honors. But the other part of the policy that this does have, which the other policies do not, is the all-risk language. And in the Indiana Repertory Theater case that was decided by the Indiana Court of Appeals, and there's another appeal on that action, which was supposed to be argued last week but got postponed. But in the first appeal, the court in its ruling made a distinction between a policy that does not have the all-risk language in it, suggesting that if all-risk language had been in the policy it was considering in that case under Indiana law, it may have made a difference as to what it considered physical loss or damage. Under your theory, can coverage be triggered every year based on the flu virus, which also is deadly and can survive on surfaces? Your Honor, the answer to that question is yes, under this policy, because this policy explicitly provides coverage for communicable diseases. And if we go to the body of the policy, first under the property damage section, which starts on page 45 of the appendix, if we continue on to page 52, under the additional coverages for property damage, the policy explicitly says, this policy includes the following additional coverages for insured physical loss or damage. And one of the additional coverages that appears on the next page, which is page 53 of the appendix, is communicable disease response coverage. And communicable disease response coverage is available to a policyholder if they can demonstrate the actual, not suspected presence of a communicable disease which prevents, limits, restricts, or prohibits access to a property by order of a relevant government agency. So that is an explicit statement in the body of the policy that a communicable disease, and the definition of communicable disease is found in the appendix at 106, and that would include COVID and the flu, Your Honor. It is an explicit reference that a communicable disease can cause physical loss or damage that would trigger the coverage of a policy. We have a similar reference under the time element portion of the policy, which begins on page 74 of the appendix, and on page 84 in the time element extensions, there is a specific coverage grant for interruption by communicable disease. Again, this is a unique distinction for the factory mutual policy compared to the circle block or sandy point policies that had no reference to communicable disease in them explicitly as it appears in this policy in two separate locations. You see, you rely on cases in which a danger to health rendered a property unsuitable for use, such as those involved asbestos, gas vapor, ammonia, E. coli, brown, recluse, whatever, spiders. But in all those cases, it was a property itself that rendered a threat to health that was not present generally in other properties. Here, none of the properties pose any COVID threat greater than the threat that is presented at all properties generally. Doesn't that make clear that the property itself isn't the cause of the health threat here, unlike the cases that you cited? No, Your Honor, I don't think it does. And one of the reasons for that is, if you look at the communicable disease portions of the policy I just directed you to with respect to property damage and time element, they both relate to preventing access to the property and the presence of the communicable disease preventing access to the property. And what we have alleged and what the orders that we've cited in our complaint precluded was access to the property. And I think it's also important to note that access does not need to be completely precluded. In both of the communicable disease coverages that I referenced, if access is limited, restricted, or prohibited, so any of those three is sufficient to trigger coverage under the policy. It doesn't need to be complete access that nobody can get in. But if there is a restriction on use caused by a communicable disease by order of a government agency and the actual presence of the virus can be shown to exist at the property, that is sufficient to potentially cause physical loss or damage within the meaning of this insurance contract. And the interpretation I'm offering is not a novel one. And it has been accepted as recently as last Thursday by the federal court in a supplemental authority we submitted to your honors yesterday in the Sacramento downtown arena decision. It's also been accepted with respect to other FM policyholders in the Cinemark case and others that we've cited in the brief. So this is not some unique interpretation that we're offering here for the first time under Indiana law. But it's one that has been adopted and recognizes other courts as at least sufficient to allow the claims to go forward into discovery to see whether the policyholder can prove their case. And that's all we're asking for here is that this interpretation that we're offering could qualify as a reasonable one that's enough to get the complaint, pass a motion to dismiss. And with that, your honors, I'd like to save the rest of my time for rebuttal, if that's okay. Thank you very much. Thank you. Hey. Morning, Mr. Mr. Morning. Good morning. May it please the court. George stores on behalf of defendant Pelly factory mutual insurance company. Stan has raised a panoply of different arguments, both this morning and in its papers. I'm going to try to focus on the ones that actually came up over the last 10 minutes, because I think that's where we probably should go. But before getting there, I do want to point out that I think all of these arguments were closed by this circuit's decisions. First and foremost, by the circle block case, which applies Indiana law and deal specifically with a question of whether COVID-19 the virus, which causes COVID-19 actually do constitute physical loss or damage. The answer there was a resounding and definitive. No. Under Indiana law, as interpreted by the IRT, by the court of appeals in the IRT case and by this circuit as well. I think the arguments that are also made have been foreclosed by other decisions in the circuit, which this court in circle block found that the laws of Illinois, for instance, do not differ in any material respect. So Sandy point dental and the Mishala case in particular. So there are the main issue, I guess, between us and the main issue that plaintiff appellant raised is this one of physical loss or damage. The first argument, I believe, was conceded, which is that the absence of the word direct between the words physical loss or damage in the FM policy makes no difference. Thanks to the very first exclusion in the policy for indirect or remote loss or damage. The second argument that was made has to do with the fact that this is an all risk policy. Now, the IRT case does distinguish a number of pre pandemic cases on the basis they do not involve an all risk policy. That is true. That said, those cases can also be distinguished on the grounds that they involve a complete loss of habitability. Thing is, in Indiana, there has not been a recognition that itself does constitute physical loss or damage. Rather, Indiana fouls couch and saying that there has to be some sort of structural or tangible alteration to property. But the fact is that whether or not plaintiff appellant is right here, and in fact, the risk, the mere risk of unactualized physical loss would be enough to trigger coverage. That doesn't make a difference because if COVID-19, when it's actually present, cannot trigger physical loss or damage, it does not constitute physical loss or damage. The mere possibility of COVID-19 also can't seem to trigger a finding that there has been physical loss or damage. Moreover, in the article, which I believe was written by a colleague of counsel for plaintiff appellant, the Lewis article, which they cite in their brief, I think that's appendix 122, there is a footnote which explains what an all risk policy is. And all that means is that coverage is sort of a general grant, and there's various exclusions. So all fortuitous losses is what an all risk policy means. And there are certain exclusions which say, okay, these things are not covered, but all other fortuitous losses are. That's one of the two main types of insurance policy. The other is a named peril, where the insurer actually goes down a list. Flood is covered, fire is covered, et cetera. That's all all risks means here. And I would also point out the Sandy Point dental policy was an all risk policy. The Mishala policies were all risk policies. The roundabout theater policy, which is relied on by IRT in reaching this decision, was also an IRT policy. There's no real there there with regard to that argument. The third point. Go ahead. No, I'm sorry. Please, please. I was going to move to a different point. Okay. With the policy language regarding physical loss or damage cover cases of mold infestation or outbreaks of Legionnaire's disease, at a particular property where measures had to be taken to address the conditions that cause the outbreak before that particular property could be habitable again? I think the key is actually found in the language of the policy itself, Your Honor. So the policy has a period of liability provision, which is well nigh identical to the period of restoration provisions that we saw in Sandy Point, for instance, and in the Circle Block case, which was decided under Indiana law. And what it says is it directly ties the idea of physical loss or damage to the idea that something has to be capable of repair or replacement. And this court has decided repair or replace does not describe cleaning measures that can be taken or the natural dissipation under which COVID disappears over time, and which stance complaint here also concedes that it disappears within a matter of hours or days. So I think the question that you ask, Your Honor, would depend on the facts of the case. If there has to be some repair or replacement of actual physical property, then under the policy, yes, that could be physical loss or damage. If as here, there is no need to repair or replace the policy, then there isn't physical loss or damage. And this court has already found that to be the case with respect to the virus that causes COVID-19. If I may just continue with the third point that counsel made, which had to do with the communicable disease provisions. And I believe the argument is elucidated this morning and also in their briefs, is that because Factory Mutual has chosen to provide a very limited coverage for communicable disease, and in particular, for communicable disease, not on its own, but the presence, the actual presence of communicable disease, when it results in a shutdown of the property for more than 48 hours, there is certain limited coverage available. Rather than the $500 million that Stant has as the total policy limit, there is a million dollars of coverage afforded. So there's a couple of issues, I think, with reasoning from the fact that FM provides this $1 million in policy to the fact that the mere presence of a communicable disease, even without the shutdown, even without the 48 hours, should somehow entitle them to $500 million. In and of itself, that seems an unreasonable interpretation of the policy. The prefatory language in the additional coverage section says also that the reference to insured physical loss or damage is, quote, subject to the policy provisions, including applicable exclusions and deductibles. Here, there is a contamination exclusion. So these coverage are subject to the contamination exclusion in this case, which bars any coverage and any recovery for contamination and any cost due to contamination. The only narrow exception to that is the precise communicable disease coverage. If you've got the presence of the disease on premises and you have to shut your premises down for more than 48 hours, you get a million dollars in coverage. Otherwise, the exclusion bars recovery for the mere presence of contamination on your property, and that's a second affirmative ground on which this court could affirm the district court's decision below. Another issue with that argument also has to do with the internal logic that it seems to suggest. There are 24 different additional coverages. Twenty-three of them refer specifically to physical loss or damage and the need for physical loss or damage. The only one that does not is the communicable disease provision. So under the rule of surplusage, which I believe features fairly prominently in stance brief where they try to compare this policy to the one in Sandy Dental, that rule is one that applies intracontractually. Here, it's got to mean something. The 23 out of these 24 coverage contain that language, and one of them does not. Further, the idea here is that because there's a heading which says communicable disease response, which requires these other things, that somehow each of those headings, I guess, under that logic would also have to constitute physical loss or damage. But I'd invite the court to take a look at the other additional coverages, many of which could not possibly constitute physical loss or damage on their own, which is the argument here. So, for instance, brands and labels is an additional coverage. Errors and omissions. Expediting costs. Currency. I could go on, but none of these in and of themselves are, in fact, physical loss or damage or constant physical loss or damage, and yet that's precisely the argument that plaintiff appellants are making here. It is also an argument, I'm not sure the case was cited in any of the briefs, but it was an argument that was rejected on those terms specifically by the District of Connecticut in the ITT case, and I can get that citation for the court if you would like. I'm sorry. There were no questions.  The only other thing I would add with the balance of my time is, again, just to reiterate, the contamination exclusion does provide a separate bar to coverage. So even if, by some reason, this court should find that somehow Stan could make a claim for physical loss or damage under Indiana law, despite the holding in Circle Block, the holding in IRT, and the holding in its other precedents, the contamination exclusion here is quite broad. It covers viruses. It covers pathogens, pathogenic organisms. It covers disease-causing agents and illness-causing agents, and it covers contamination at all costs due to contamination. There's simply no way around the breadth of that exclusion other than the very specific coverage which Factory Mutual has chosen to provide for precisely situations like this one, the spread of a communicable disease and the forced shutdown of a property. The fact that FM chooses to provide that coverage and sublimits it to $1 million should not somehow open up and unlock the remainder of the policy up to the full policy limit, which is precisely what plaintiff appellants are arguing. With that, Your Honor, I will rest unless there are any questions. Thank you very much. Thank you very much. Mr. Ellison, you asked for two minutes. We'll give you your two. Thank you. Thank you, Your Honor. And I'll try to cover everything. I'll start with Indiana law requires looking at the actual language of the policy. If you look at page 852 of the policy in the property damage section, it expressly says this policy includes the following additional coverages for insured physical loss or damage. And directly underneath that appears the communicable disease property damage provision. It couldn't be clearer or more explicit that one of the causes of loss that could qualify as physical loss or damage is a communicable disease like COVID-19. This policy also does not require complete loss of use, but only limited or some restriction on use caused by a government order. On the period of liability point, Factory Mutual only cites the one measure of loss under the period of liability provision. There are many more, and one in particular is of extreme importance to this case. At page 82 of the appendix, the period of liability for measuring the loss of gross profit is not measured by repair or replacement. It is measured simply by time. And that provision provides that the period of liability applying to gross profit starts from the time of physical loss or damage of the type insured. And ending not later than the period shown in the limits of liability clause of the declaration section. During which the period results during which the results of the business so be directly affected by such damage. So that is a period of liability provision that has nothing to do with repair or replacement. And is a portion of the policy under which Stan is entitled to seek coverage. Whether it needs to repair or replace anything, if the trigger for physical loss or damage by communicable disease is satisfied. One last point. Under the communicable disease provisions, there is an exclusion for terrorism to both of them. Now if there was no coverage for physical loss or damage caused by communicable disease. There wouldn't be no need to have an exclusion for terrorism. Because the policy would never be triggered for physical loss or damage caused by communicable disease according to factory mutual. But they instead recognize that coverage for physical loss or damage caused by communicable disease can be provided by this policy. And then exclude from that coverage communicable disease that impacts property that is caused by terrorism. That is a fatal drafting admission by factory mutual that this policy responds for communicable disease exactly the way that we've pledged in the complaint. And we ask that you reverse the district court. Thank you very much. Thank you. Thank you. Thank you very much, Mr. Ellison. Thank you, Mr. Masturbus. We are going to take the case under advisement.